UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER HAWKINS and DARYL DUNSMORE, | Case No.:  3:20-cv-2200-WQH-KSC |
| Plaintiffs, | **ORDER** |
| vs. | **1) DENYING IN PART MOTION TO PROCEED IN FORMA PAUPERIS [ECF No. 2] AND DISMISSING COMPLAINT AS TO PLAINTIFF DUNSMORE PURSUANT TO 28 U.S.C. § 1915(g)** |
| SAN DIEGO COUNTY, SAN DIEGO COUNTY JAIL, OFFICE OF ASSIGNED COUNSEL, MICHAEL GARCIA, WILLIAM TRAINOR, JACKIE BRADEN, and DOES 1-10, | |
| Defendants. | **2) GRANTING IN PART MOTION TO PROCEED IN FORMA PAUPERIS [ECF No. 2] AND DISMISSING COMPLAINT AS TO PLAINTIFF HAWKINS FOR FAILURE TO STATE A CLAIM PURSUANT TO 28 U.S.C. § 1915(e)(2)(B) AND 28 U.S.C. § 1915A(b)** |
| | **3) DENYING MOTION FOR ADA ACCESS [ECF No. 3]** |
| | **4) DENYING MOTION FOR CLASS CERTIFICATION [ECF No. 4]** |

1

**5) DENYING MOTION APPOINTMENT OF COUNSEL [ECF No. 5]**

**6) DENYING MOTION FOR A TEMPORARY RESTRAINING ORDER [ECF No. 6]**

Plaintiffs Christopher Hawkins and Daryl Dunsmore, currently incarcerated at the San Diego County Jail ("SDCJ"), have filed a pro se civil rights action pursuant 42 U.S.C. Section 1983. (*See* ECF No. 1.) Plaintiffs did not prepay the $400 civil filing fee required by 28 U.S.C. Section 1914(a) at the time of filing. They have instead filed a Motion to Proceed In Forma Pauperis ("IFP") pursuant to 28 U.S.C. Section 1915(a). (*See* ECF No. 2.) Plaintiffs have also filed a Motion for ADA Access (ECF No. 3), a Motion for Class Certification (ECF No. 4), a Motion for Appointment of Counsel (ECF No. 5), and a Motion for a Temporary Restraining Order (ECF No. 6).

**I.     Motion to Proceed In Forma Pauperis – Plaintiff Daryl Dunsmore**

A.     Standard of Review

"All persons, not just prisoners, may seek IFP status." *Moore v. Maricopa County Sheriff's Office*, 657 F.3d 890, 892 (9th Cir. 2011). Prisoners like Dunsmore, however, "face an additional hurdle." *Id*.

In addition to requiring prisoners to "pay the full amount of a filing fee," in "monthly installments" or "increments" as provided by 28 U.S.C. § 1915(a)(3)(b), the Prison Litigation Reform Act ("PLRA") amended section 1915 to preclude the privilege to proceed IFP in cases where the prisoner:

> . . . has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief can be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

2

"This subdivision is commonly known as the 'three strikes' provision." *Andrews v. King*, 398 F.3d 1113, 1116 n.1 (9th Cir. 2005). "Pursuant to § 1915(g), a prisoner with three strikes or more cannot proceed IFP." *Id.*; *see also Andrews v. Cervantes*, 493 F.3d 1047, 1052 (9th Cir. 2007) (hereafter "*Cervantes*") (stating that under the PLRA, "[p]risoners who have repeatedly brought unsuccessful suits may entirely be barred from IFP status under the three strikes rule[.]"). The objective of the PLRA is to further "the congressional goal of reducing frivolous prisoner litigation in federal court." *Tierney v. Kupers*, 128 F.3d 1310, 1312 (9th Cir. 1997).

"Strikes are prior cases or appeals, brought while the plaintiff was a prisoner, which were dismissed on the ground that they were frivolous, malicious, or failed to state a claim," *Andrews*, 398 F.3d at 1116 n.1 (internal quotations omitted), "even if the district court styles such dismissal as a denial of the prisoner's application to file the action without prepayment of the full filing fee." *O'Neal v. Price*, 531 F.3d 1146, 1153 (9th Cir. 2008). When courts "review a dismissal to determine whether it counts as a strike, the style of the dismissal or the procedural posture is immaterial. Instead, the central question is whether the dismissal 'rang the PLRA bells of frivolous, malicious, or failure to state a claim.'" *El-Shaddai v. Zamora*, 833 F.3d 1036, 1042 (9th Cir. 2016) (quoting *Blakely v. Wards*, 738 F.3d 607, 615 (4th Cir. 2013)). "When . . . presented with multiple claims within a single action," however, courts may "assess a PLRA strike only when the case as a whole is dismissed for a qualifying reason under the Act." *Hoffman v. Pulido*, 928 F.3d. 1147, 1152 (9th Cir. 2019) (citing *Washington v. L.A. Cty. Sheriff's Dep't*, 833 F.3d 1048, 1057 (9th Cir. 2016)).

Once a prisoner has accumulated three strikes, section 1915(g) prohibits his pursuit of any subsequent IFP civil action or appeal in federal court unless he faces "imminent danger of serious physical injury." *See* 28 U.S.C. § 1915(g); *Cervantes*, 493 F.3d at 1051-52 (noting § 1915(g)'s exception for IFP complaints which "make[] a plausible allegation that the prisoner faced 'imminent danger of serious physical injury' at the time of filing.").

/ / /

B.    <u>Discussion</u>

The Court has reviewed the Complaint and finds it contains no "plausible allegations" to suggest Dunsmore "faced 'imminent danger of serious physical injury' at the time of filing." *Cervantes*, 493 F.3d at 1055 (quoting 28 U.S.C. § 1915(g)). In count one, Dunsmore alleges "[t]he Defendants have established law policy and procedures . . . [which] obstruct[] Plaintiff's access to the courts . . . [by allowing] them to make judicial decisions although not judicial officers . . . to refuse to file legal documents, block writs, legal mail, legal tools, [etc.]." Compl. at 4. In counts two and three, Dunsmore also alleges that Defendants have "refused to establish and maintain access to services for individuals with disabilities both physical and mental as qualified under the ADA . . . ," and that "Defendants are depriving Plaintiffs of the right to practice their religion. . . ." *Id.* at 5-6. These allegations do not rise to the level of "imminent danger of serious physical injury." *See Cervantes*, 493 F.3d at 1055.

While Defendants typically carry the initial burden to produce evidence demonstrating a prisoner is not entitled to proceed IFP, *Andrews*, 398 F.3d at 1119, "in some instances, the district court docket may be sufficient to show that a prior dismissal satisfies at least one on the criteria under § 1915(g) and therefore counts as a strike." *Id.* at 1120. That is the case here.

Based on a review of its own docket and other court proceedings available on PACER, the Court finds that Daryl Lee Dunsmore, identified as CDCR Inmate #AD-6237, while incarcerated, has had three prior civil actions dismissed on the grounds that they were frivolous, malicious, or failed to state a claim upon which relief may be granted.

They are:

(1)   *Dunsmore v. San Diego County Sheriff's Dep't, et al.*, Civil Case No. 3:11-cv-00083-IEG-WVG (S.D. Cal. Nov. 8, 2011) (Order Dismissing Second Amended Complaint for failing to state a claim) (strike one);

/ / /

/ / /

(2) *Dunsmore v. State of California, et al.*, Civil Case No. 2:11-cv-07141-DOC-JCG (C.D. Cal. Sept. 4, 2012) (Order Dismissing Second Amended Complaint for failing to state a claim) (strike two);

(3) *Dunsmore v. State of California, et al.*, Civil Case No. 3:12-cv-01936-JAH-DHB (S.D. Cal. March 20, 2013) (Order granting IFP and Dismissing First Amended Complaint for failing to state a claim and as frivolous) (strike three); and

(4) *Dunsmore v. State of California, et al.*, Civil Case No. 3:20-cv-00406-AJB-WVG (S.D. Cal. Aug. 4, 2020) (Order Dismissing First Amended Complaint for failing to state a claim) (strike four).

Accordingly, because Dunsmore has, while incarcerated, accumulated at least three "strikes" as defined by § 1915(g), and he fails to make a "plausible allegation" that he faced imminent danger of serious physical injury at the time he filed his Complaint, he is not entitled to the privilege of proceeding IFP in this action. *See Cervantes*, 493 F.3d at 1055; *Rodriguez*, 169 F.3d at 1180 (finding that 28 U.S.C. § 1915(g) "does not prevent all prisoners from accessing the courts; it only precludes prisoners with a history of abusing the legal system from continuing to abuse it while enjoying IFP status"); *see also Franklin v. Murphy*, 745 F.2d 1221, 1231 (9th Cir. 1984) (stating that "court permission to proceed IFP is itself a matter of privilege and not right"). The case is thus **DISMISSED** as to Plaintiff Dunsmore.

## II. Motion to Proceed in Forma Pauperis – Plaintiff Christopher Hawkins

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $400.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to

---

[1] For civil cases like this one, filed before December 1, 2020, the civil litigant bringing suit must pay the $350 statutory fee in addition to a $50 administrative fee. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14

prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). However, a prisoner who is granted leave to proceed IFP remains obligated to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, 136 S. Ct. 627, 629 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), and regardless of whether his action is ultimately dismissed. *See* 28 U.S.C. § 1915(b)(1), (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 136 S. Ct. at 629.

In support of his IFP Motion, Plaintiff Hawkins has submitted a certified copy of his trust account statement pursuant to 28 U.S.C. Section 1915(a)(2) and S.D. Cal. Civ. L.R. 3.2. *Andrews*, 398 F.3d at 1119. The Court has reviewed Hawkins's trust account activity, as well as the attached prison certificate verifying his available balances. *See* ECF No. 2,

───────────────────────

(eff. June. 1, 2016). The $50 administrative fee does not apply to persons granted leave to proceed IFP, however. *Id.* This administrative fee increased to $52 for civil cases filed on or after December 1, 2020, but that portion still does not apply to persons granted leave to proceed IFP. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2020).

at 4-6. These documents show that Hawkins carried an average monthly balance of $0.37, average monthly deposits to his trust account for the six months preceding the filing of this action of $0.00, and an available balance of $0.37 at the time of filing. *See id.* at 4.

Therefore, the Court **GRANTS** Hawkins' Motion to Proceed IFP (ECF No. 2) and does not assesses an initial partial filing fee pursuant to 28 U.S.C. Section 1915(b)(1) because Hawkins does not have sufficient funds. The Court directs the Watch Commander, or their designee, to collect the $350.00 balance of the filing fees required by 28 U.S.C. Section 1914 and to forward it to the Clerk of the Court pursuant to the installment payment provisions set forth in 28 U.S.C. Section 1915(b)(1).

**III.   Sua Sponte Screening pursuant to 28 U.S.C. Section 1915(e)(2) and Section 1915A(b)**

A. Standard of Review

Because Hawkins is a prisoner and is proceeding IFP, his Complaint requires a pre-answer screening pursuant to 28 U.S.C. Section 1915(e)(2) and Section 1915A(b). Under these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. Section 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. Section 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.,* 689 F.3d 680, 681 (7th Cir. 2012)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under Section 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to Section 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil

Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

B. Hawkins' Factual Allegations

In count one, Hawkins alleges that "Defendants are obstructing Plaintiff's access to the courts with erroneous policy written or unwritten which allows them to make judicial decisions although not judicial officers." Compl. at 4. Specifically, Hawkins contends that Defendants "refuse to file legal documents, block writs, legal mail legal tools, legal access to collateral attack, computer instruction or research access, computer assistance or training . . . ." *Id.* In count two, Hawkins claims Defendants have "failed and refused to establish and maintain access to services for individuals with disabilities both physical and mental as qualified under the ADA [Americans with Disabilities Act]." *Id.* At 5. He alleges Defendants have done this by "depriving them of all programming, library services, religious services, recreational services, entertainment services, educational service[s], mental health programs, trusty work services and all manner of service[s] that may otherwise be available . . . ." *Id.* He further contends that Defendants "refuse[] to respond to 100s of administrative grievances or take any corrective action holding plaintiffs under conditions of punishment for being disabled and depriving them of their constitutional protections against such cruel and unusual punishment and equal protection of the law . . . ." *Id.* Lastly, in count three, Hawkins claims that "Defendants are depriving Plaintiffs of the right to practice their religion including denial of religious services, books,

symbolism, participation in social religious services, [and] denial of religious diets . . . ." *Id.* at 6.

C.   42 U.S.C. § 1983

"Section 1983 creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quotation marks and citations omitted). "To establish § 1983 liability, a Plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

D.   Discussion

1.   Individual Causation – Defendants Garcia, Trainor and Braden

Hawkins names Michael Garcia, William Trainor, and Jackie Braden, employees of the Office of Assigned Counsel (OAC), as Defendants and alleges they "established law policy and procedures that abridge[] the rights of Plaintiffs," have "failed and refused to establish and maintain access to services for individuals with disabilities," and are "depriving Plaintiffs of the right to practice their religion." Compl. at 4-6. OAC is a San Diego County entity which "conducts business with Defendant San Diego County concerning Plaintiff's due process legal access." *Id.* at 2.

A person deprives another "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). Broad and conclusory allegations, however, such as the ones put forth in Hawkins' Complaint, fail to plausibly show how, or to what extent, each Defendant may be held individually liable for any constitutional injury. *See Iqbal*, 556 U.S. at 676-77; *Jones v. Comm'ty Redev. Agency*

*of City of Los Angeles*, 733 F.2d 646, 649 (9th Cir. 1984) (even pro se plaintiff must "allege with at least some degree of particularity overt acts which defendants engaged in" in order to state a claim). Instead, "Plaintiff must plead that each Government-official defendant, through [his] own individual actions, has violated the Constitution" in order to plead a plausible claim for relief. *Iqbal*, 556 U.S. at 676-77. "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (citing *Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976)); *Berg v. Kincheloe*, 794 F.2d 457, 460 (9th Cir. 1986); *Estate of Brooks v. United States*, 197 F.3d 1245, 1248 (9th Cir. 1999) (stating that "[c]ausation is, of course, a required element of a § 1983 claim.") Here, Hawkins offers no specific factual allegations to support a claim that any of these named Defendants were responsible for any specific claims Hawkins raises in his Complaint.

As to the "Does 1-10" Hawkins has named as Defendants, the Federal Rules of Civil Procedure do not authorize or prohibit the use of fictitious parties, but Rule 10 does require a plaintiff to include the names of all parties in his complaint. *See* Fed. R. Civ. P. 10(a). Courts especially disfavor Doe pleading in an IFP case because in the event the plaintiff's complaint alleges a plausible claim for relief, it is effectively impossible for the United States Marshal or deputy marshal to fulfill his or her duty to serve an unnamed defendant. *See* Fed. R. Civ. P. 4(c)(3); 28 U.S.C. § 1915(d); *Walker v. Sumner*, 14 F.3d 1415, 1422 (9th Cir. 1994) (stating that in order to properly effect service under Rule 4 in an IFP case, the plaintiff is required to "furnish the information necessary to identify the defendant."); *Finefeuiaki v. Maui Cmty. Corr. Ctr. Staff & Affiliates*, 2018 WL 3580764, at *6 (D. Haw. July 25, 2018) (noting that "[a]s a practical matter, the United States Marshal cannot serve a summons and complaint on an anonymous defendant.").

"A plaintiff may refer to unknown defendants as Defendant John Doe 1, John Doe 2, John Doe 3, and so on, but he must allege specific facts showing how each particular doe defendant violated his rights." *Cuda v. Employees/Contractors/Agents at or OCCC*,

2019 WL 2062945, at *4 (D. Haw. May 9, 2019). A plaintiff may also seek discovery to obtain the names of the Does and later amend his pleading in order to substitute the true names of those defendants, unless it is clear that discovery will not uncover their identities, or that his complaint is subject to dismissal on other grounds. *See Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (emphasis added) (citing *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)).

Hawkins has named "Does 1-10" but, as with the other named Defendants, he makes no specific allegations against any individual Doe in relation to the constitutional violations which form the basis of his suit. Simply put, Hawkins fails to link any particular constitutional violation to any specific, individual state actor, and he fails to even minimally explain how each individual Doe party he seeks to sue personally caused a violation of his constitutional rights. *See* Compl. at 4-6; *Iqbal*, 556 U.S. at 677. As noted above, "[a] plaintiff must allege facts, not simply conclusions, t[o] show that [each defendant] was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998); *see also Estate of Brooks*, 197 F.3d at 1248.

As it stands, Hawkins' Complaint fails to "plead[] factual content that [would] allow[] the court to draw the reasonable inference that [any individual] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Accordingly, Defendants Trainor, Garcia, Braden and Does 1-10 must be dismissed.

### 2. Access to Courts

Hawkins claims his right to access the courts has been violated because Defendants are making judicial decisions even though they are not judicial officers and are "refus[ing] to file legal documents, block[ing] writs, legal mail, legal tools, legal access to collateral attack, computer instruction or research access . . ." Compl. at 4. Prisoners have a constitutional right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 346 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977), *limited in part on other grounds by Lewis*, 518 U.S. at 354. The right of access does not require the State, however, to "enable the prisoner

to discover grievances," or even to "litigate effectively once in court." *Id*. at 354; *see also Jones v. Blanas*, 393 F.3d 918, 936 (9th Cir. 2004) (defining actual injury as the "inability to file a complaint or defend against a charge"). Instead, *Lewis* holds:

> [T]he injury requirement is not satisfied by just any type of frustrated legal claim . . . . Bounds does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Id*. at 354-55; *see also Spence v. Beard*, No. 2:16-CV-1828 KJN P, 2017 WL 896293, at *2-3 (E.D. Cal. Mar. 6, 2017).

In order to state a claim of a denial of the right to access the courts, a prisoner must establish that he has suffered "actual injury," a jurisdictional requirement derived from the standing doctrine. *Lewis*, 518 U.S. at 349. An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Id*. at 348 (citation and internal quotations omitted). Indeed, the failure to allege an actual injury is "fatal." *Alvarez v. Hill*, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008) (stating that "[f]ailure to show that a 'non-frivolous legal claim had been frustrated' is fatal.") (quoting *Lewis*, 518 U.S. at 353 & n.4). In addition to alleging an "actual injury," Hawkins must also plead facts sufficient to describe the "non-frivolous" or "arguable" nature of underlying claim he contends was lost as result of Defendants' actions. *Christopher v. Harbury*, 536 U.S. 403, 416 (2002). The nature and description of the underlying claim must be set forth in the pleading "as if it were being independently pursued." *Id*. at 417.

The factual allegations in Hawkins' Complaint are insufficient to state an access to courts claim. He has not alleged he suffered any "actual prejudice with respect to contemplated or existing litigation." *Lewis*, 518 U.S. at 351-53; *Silva v. Di Vittorio*, 658

F.3d 1090, 1104 (9th Cir. 2011). Further, although Hawkins claims the Defendants are "obstructing Plaintiffs' access to the courts with erroneous policy . . . which allows them to make judicial decision although not judicial officers," and that this policy enables Defendants to "refuse to file legal documents, block writs legal mail, legal tools, legal access to collateral attack," among other things, he has not provided the Court with the "nature and description" of the claims he wishes to bring nor the "non-frivolous" or "arguable" nature of those claims. *Harbury*, 536 U.S. at 413-14. Accordingly, the Court finds Hawkins' access to courts claims must be dismissed for failing to state a plausible claim upon which § 1983 relief can be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii), § 1915A(b)(1); *Iqbal*, 556 U.S. at 678.

### 3.  Americans with Disabilities Act

In count two, Hawkins claims Defendants are denying services to disabled inmates, in violation of the Americans with Disabilities Act ("ADA"). Compl at 5. The ADA applies in the prison context. *See* 42 U.S.C. § 12131(1)(B); *U.S. v. Georgia*, 546 U.S. 151, 154 (2006); *see also Pierce v. Cty. of Orange*, 526 F.3d 1190, 1214 (9th Cir. 2008) (stating that "[i]t is undisputed that Title II applies to the  . . . jails' services, programs, and activities for detainees.") In order to state a claim under Title II of the ADA, however, a plaintiff must allege:

> (1) he 'is an individual with a disability;' (2) he 'is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities;' (3) he 'was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity;' and (4) 'such exclusion, denial of benefits, or discrimination was by reason of [his] disability.'

*O'Guinn v. Lovelock Correctional Center*, 502 F.3d 1056, 1060 (9th Cir. 2007) (citing *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004)), (quoting *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002) (per curiam)).

Hawkins may not pursue an ADA claim against the individual Defendants in their individual capacities. *See Walsh v. Nevada Dep't of Human Res.*, 471 F.3d 1033, 1038 (9th

Cir. 2006) (holding that the "bar on suits against individual defendants" applies to the ADA); *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002) (holding that the "ADA applies only to public entities."); *see also Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002) ("[A] plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in [his or] her individual capacity to vindicate rights created by Title II of the ADA.")

Further, to the extent Hawkins includes the County of San Diego, which is a public entity subject to suit under Title II, he nevertheless fails to allege that he suffers from any qualified disability, or that he has been discriminated against "by reason of [that] disability." *O'Guinn*, 502 F.3d at 1060. Instead, as noted above, Hawkins offers only vague and conclusory allegations, alleging simply that Defendants "failed and refused to establish and maintain [disabled inmates] access" to various services and have "refus[ed] to respond to 100s of administrative grievances . . . ." Compl. at 5. But to state an ADA claim based on disability discrimination, Hawkins must include factual content to show "either (i) discrimination based on disparate treatment or impact, or (ii) denial of reasonable modifications or accommodations." *Atayde v. NAPA State Hosp*., 255 F. Supp. 3d 978, 1000 (E.D. Cal. 2017) (citing *Fortyune v. Am. Multi-Cinema, Inc*., 364 F.3d 1075, 1086 (9th Cir. 2004)). To show disparate treatment, he must allege that other non-disabled individuals without his disability were treated more favorably. *Id.* (citing *McGary v. City of Portland*, 386 F.3d 1259, 1265–66 (9th Cir. 2004)). To show disparate impact, he must allege that a facially neutral policy has a significantly adverse or disproportionate impact on disabled persons. *Id.* (citing *Lawman v. City & Cty. of San Francisco*, 159 F. Supp. 3d 1130, 1148 n.11 (N.D. Cal. 2016)). And to show failure to accommodate, he must allege that public entity knew of his disability but failed to provide reasonable accommodations for it. *Id.* (citing *Robertson v. Las Animas Cty. Sheriff's Dep't*, 500 F.3d 1185, 1196 (9th Cir. 2007)); *see also Barnett v. Cty. of Los Angeles*, No. 2:20-CV-02530-ODW-ASX, 2020 WL 5350286, at \*5 (C.D. Cal. Sept. 3, 2020). Hawkins makes no such allegations; therefore, his ADA claims must be dismissed. *See Iqbal*, 556 U.S. at 678.

/ / /

### 4. Eighth Amendment

Hawkins also claims his Eighth Amendment rights have been violated by Defendants' "failure to establish and maintain access to services for individuals with disabilities, both physical and mental." Compl. at 5. "Inmates who sue prison officials for injuries suffered while in custody may do so under the Eighth Amendment's Cruel and Unusual Punishment Clause or, if not yet convicted, under the Fourteenth Amendment's Due Process Clause." *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1067-68 (9th Cir. 2016). "[W]hen determining whether the Eighth or Fourteenth Amendment governs an inmate's claim, '[t]he critical juncture is conviction, either after trial or . . . by plea, at which point the state acquires the power to punish and the Eighth Amendment is implicated.'" *Resnick v. Hayes*, 213 F.3d 443, 448 (9th Cir. 2000) (quoting *Berry v. City of Muskogee*, 900 F.2d 1489, 1493 (10th Cir. 1990)). Thought Hawkins raises his claims under the Eighth Amendment, he is in custody at the county jail. *See* Compl. at 1, 5. Because it is unclear whether the Eighth or Fourteenth Amendment applies, the Court will analyze Hawkins' claims under both amendments.

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. Amend. VIII. Only "unnecessary and wanton infliction of pain" constitutes cruel and unusual punishment as prohibited by the United States Constitution. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). In order to state a plausible Eighth Amendment claim for relief, a Plaintiff must allege facts sufficient to show that Defendants acted with 'deliberate indifference.'" *Castro*, 833 F.3d at 1068; *Iqbal*, 556 U.S. at 678. "A prison official acts with 'deliberate indifference . . . only if the [prison official] knows of and disregards an excessive risk to inmate health and safety.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002), *overruled on other grounds by Castro*, 833 F.3d at 1076. "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id*. (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Hawkins has not sufficiently alleged he was at serious risk of harm. He has not provided sufficient facts to suggest the Defendants' refusal to "establish and maintain access to services for individuals with disabilities" resulted in "significant injury" or caused "the unnecessary and wanton infliction of pain." *Colwell v. Bannister*, 763 F.3d 1060, 1066 9th Cir. 2014). Nor has he provided sufficient facts to show the Defendants knew that failing to provide disabled inmates with religious services, entertainment, library access, etc., created a substantial risk of serious harm. Thus, Hawkins' Eighth Amendment claim fails because he has not alleged sufficient "factual content that allows the court to draw the reasonable inference that [Defendants are] liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Until recently, the Ninth Circuit applied a single "deliberate indifference" test when analyzing claims brought by persons in custody whether they arose under the Eighth or the Fourteenth Amendment. *See Castro*, 833 F.3d at 1068 (citing *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232 (9th Cir. 2010)). However, in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), the Supreme Court made clear that proof of an intent or motive to punish is not required for a pretrial detainee to prevail on a claim that his due process rights were violated and concluded that "a pretrial detainee can prevail by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Id*. at 398. The Ninth Circuit has interpreted *Kingsley* as "reject[ing] the notion that there exists a single 'deliberate indifference' standard applicable to all § 1983 claims, whether brought by pretrial detainees or by convicted prisoners." *Castro*, 833 F.3d at 1069. The Ninth Circuit held in *Castro* that an objective standard of reasonableness should apply to failure-to-protect claims under the Fourteenth Amendment, *id*. at 1070-71, and has since extended the "objective deliberate indifference" standard to Fourteenth Amendment claims of inadequate medical care. *See Gordon v. Cty. of Orange*, 888 F.3d 1118, 1120 (9th Cir. 2018); *see also Sandoval v. Cty. of San Diego*, No. 18-55289, 2021 WL 116539, at *7 (9th Cir. Jan. 13, 2021) (explaining how *Kingsley* "cast doubt on [the Ninth Circuit's] practice

of evaluating Eighth Amendment and Fourteenth Amendment claims under the same standard.").

It remains unclear if *Kingsley*'s objective deliberate indifference standard applies beyond excessive force, failure-to-protect, and medical care claims to encompass all claims raised by a pretrial detainee involving the conditions of his or her confinement. *See Cheung v. Sequeira*, Civ. No. 17-00257 DKW-KSC, 2017 WL 3431586, at *3 (D. Haw. Aug. 8, 2017) (noting that only the Second Circuit has extended *Kingsley*'s holdings to all pretrial detainee deliberate indifference conditions of confinement claims). After *Gordon*, however, district courts in the Ninth Circuit have applied the objective deliberate indifference standard to pretrial conditions of confinement claims generally. *See, e.g., Turano v. Cnty. of Alameda*, No. 17-cv-06953-KAW, 2018 WL 3054853, at *6 (N.D. Cal. June 20, 2018) (finding the Ninth Circuit's reasoning in *Gordon* applies to conditions of confinement claims); *Smith v. Cnty. of Riverside Sheriff Dept.*, No. EDCV 17-1969-DSF (SP), 2019 WL 2880419, at *8 (C.D. Cal. Mar. 1, 2019) (finding that if plaintiff was a pretrial detainee, the objective deliberate indifference standard should apply to his "broader conditions of confinement claims"). Accordingly, in the event Hawkins has not yet been convicted, the Court will also apply the *Kingsley* standard to his conditions of confinement claims.

To state a claim for deliberate indifference under the Fourteenth Amendment, a pretrial detainee must establish the following four elements:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Castro*, 833 F.3d at 1071. "With respect to the third element, the defendant's conduct must be objectively unreasonable." *Id.* (citing *Kingsley*, 576 U.S. at 396). The plaintiff must

allege "more than negligence but less than subjective intent—something akin to reckless disregard." *Id*. The "'mere lack of due care by a [county] official does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." *Id*. (quoting *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986)).

Here, Hawkins fails to allege facts sufficient to plausibly show that the failure to establish and maintain access to services for individuals with mental and physical disabilities put him at substantial risk of suffering serious harm, that Defendants failed to take reasonable measures to abate that risk, or that a reasonable person in the Defendants' position would have appreciated a high risk of harm existed under the circumstances. *Id*. Instead, Hawkins merely proclaims that the conditions of his confinement in the SDCJ constitute "cruel and unusual punishment." *See* Compl. at 5. But without more, these types of conclusory allegations are also insufficient to state a plausible Fourteenth Amendment claim. *See Iqbal*, 556 U.S. at 679 (stating that "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations").

### 5. Equal Protection

Hawkins also alleges in count two that the denial of services to disabled inmates violates the Equal Protection Clause of the Fourteenth Amendment. Compl. at 5. The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *See City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); *see also Vacco v. Quill*, 521 U.S. 793, 799 (1997) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982) and *Tigner v. Texas*, 310 U.S. 141, 147 (1940)); *Fraley v. Bureau of Prisons*, 1 F.3d 924, 926 (9th Cir. 1993) (per curiam). To establish an equal protection violation, Hawkins must demonstrate "that the [challenged action], either on its face or in the manner of its enforcement, results in members of a certain group being treated differently from other persons based on membership in that group." *McLean v. Crabtree*, 173 F.3d 1176, 1185 (9th Cir. 1999). "Second, if it is demonstrated that a cognizable class is treated differently, the court must analyze under the appropriate level of scrutiny whether the distinction made between the two groups is justified." *Id*. (citation and quotations omitted). If the aggrieved

party is a member of a protected or suspect class, or otherwise suffers the unequal burdening of a fundamental right, the court applies strict scrutiny. *City of Cleburne*, 473 U.S. at 439-40. "Government actions that do not . . . involve suspect classifications will be upheld if [they] are rationally related to a legitimate state interest." *Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197, 1208 (9th Cir. 2005).

"'[T]he disabled do not constitute a suspect class for equal protection purposes'" and therefore the questioned government action need only be rationally related to a legitimate government interest. *See Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001) (quoting *Does 1-5 v. Chandler*, 83 F.3d 1150, 1155 (9th Cir. 1996)).  Hawkins has not made a sufficient showing that the denial of services he claims are occurring is not rationally related to a legitimate government interest, nor that "members of a certain group [are] being treated differently from other persons based on membership in that group." *McLean*, 173 F.3d at 1185. He simply alleges that disabled inmates are being denied certain services, which is not sufficient to plausibly state an Equal Protection claim. "Intentional discrimination means that a defendant acted at least in part *because of* a plaintiff's protected status." *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003) (emphasis in original) (quoting *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir. 1994)). Accordingly, the Court dismisses this claim pursuant to 28 U.S.C. § 1915A(b)(1) because Hawkins has not plausibly alleged a § 1983 claim upon which relief could be granted. *Iqbal*, 556 U.S. at 678.

### 6.  Freedom of Religion

In count three, Hawkins claims his right to "freedom of religion" has been violated by Defendants. Compl. at 6. The First Amendment bars the government from, among other things, "making a law prohibiting the free exercise of religion." *Hartmann v. Cal. Dep't Corrs. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013). Although Hawkins does not specifically invoke it, the Court liberally construes Hawkins' Complaint as attempting to state claims under both the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). *See* 42 U.S.C. § 2000cc-1(a); *see also Alvarez*

1  *v. Hill*, 518 F.3d 1152, 1157-58 (9th Cir. 2008) (noting that a prisoner need not identify

2  RLUIPA as a cause of action in order to state a claim based upon that law). Section 3 of

3  RLUIPA provides that "[n]o government shall impose a substantial burden on the religious

4  exercise of a person residing in or confined to an institution . . . even if the burden results

5  from a rule of general applicability" absent a showing that the burden imposed is "in

6  furtherance of a compelling government interest" and "is the least restrictive means of

7  furthering . . . that interest." 42 U.S.C. § 2000cc-1(a).

8      Hawkins' Complaint fails to state a First Amendment free exercise or RLUIPA claim

9  against Defendants. In order to state a free exercise claim, Hawkins must "show that the

10  government action in question substantially burdens the person's practice of [their]

11  religion. "A substantial burden places more than an inconvenience on religious exercise; it

12  must have a tendency to coerce individuals into acting contrary to their religious beliefs or

13  exert substantial pressures on an adherent to modify his behavior and to violate his beliefs."

14  *Jones v. Williams*, 791 F.3d 1023, 1031-32 (9th Cir. 2015) (internal citations, quotation

15  marks, and alterations omitted). Similarly, the Ninth Circuit has explained that a

16  "'substantial burden'" sufficient to state a RLUIPA claim is a "'significantly great

17  restriction or onus upon [religious] exercise,'" and "[i]n the context of a prisoner's

18  constitutional challenge to institutional policies, [the Ninth Circuit] has held that a

19  substantial burden occurs 'where the state . . . denies [an important benefit] because of

20  conduct mandated by religious belief, thereby putting substantial pressure on an adherent

21  to modify his behavior and to violate his beliefs.'" *Hartmann*, 707 F.3d at 1124-25 (quoting

22  *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1039 (9th Cir. 2004);

23  *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005)).

24      Applying either framework, Hawkins has not plausibly alleged how Defendants

25  have placed a substantial burden on his religious exercise, and how, if at all, the conduct

26  alleged "prevented him from fulfilling the commandments" of his religion. *Cf. Wolcott v.*

27  *Bd. of Rabbis*, 738 F. App'x 538, 539 (9th Cir. 2018) (explaining that non-conclusory

28  allegations "that [plaintiff's] possession and use of Jewish artifacts were restricted, such

restriction prevented him from fulfilling the commandments of the Jewish faith, and a substantial burden on his exercise of Judaism resulted" were sufficient to survive screening pursuant to 28 U.S.C. Section 1915A). Instead, he simply makes conclusory allegations that "Defendants are depriving Plaintiffs of the right to practice their religion" by denying them religious services, books, symbolism, and diets. Compl. at 6. As a result, Hawkins' First Amendment free exercise and RLUIPA claims in count three of his Complaint must be dismissed for failure to state a claim upon which relief can be granted. *See* 28 U.S.C. § 1915(e)(2); 28 U.S.C. § 1915A(b); *Iqbal*, 556 U.S. at 678.

### 7.  Defendant San Diego County

Hawkins' claims against the County of San Diego are also insufficient. In order to establish a county's liability pursuant to 42 U.S.C. § 1983, "[a] plaintiff[] must show that the challenged conditions were part of a policy, custom or practice officially adopted by defendants." *Upshaw v. Alameda County*, 377 F. Supp. 3d 1027, 1032 (N.D. Cal. March 27, 3019) (citing *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978)). A plaintiff must also allege that "the policy or custom "evince[s] a 'deliberate indifference' to the constitutional right and [is] the 'moving force behind the constitutional violation.'" *Id*. (citing *Rivera v. County of L.A.*, 745 F.3d 384, 389 (9th Cir. 2014)). "Mere negligence or accident" are not sufficient. *Kingsley*, 576 U.S. at 395. Here, Hawkins' Complaint fails to allege that any staff at SDCJ acted pursuant to a county policy or custom. Therefore, he fails to state a claim upon which relief may be granted pursuant to § 1983 as to the County of San Diego.

### 8.  Defendants San Diego County Jail and Office of Assigned Counsel

To the extent Hawkins names the "San Diego County Jail" and "Office of Assigned Counsel" as Defendants, he fails to state a claim upon which § 1983 relief may be granted. As the Court has noted, "[t]o establish § 1983 liability, a Plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a *person* acting under color of state law." *Tsao*, 698 F.3d at 1138 (emphasis added). "Persons" under § 1983 are state and local officials sued

in their individual capacities, private individuals and entities which act under color of state law, and/or the local governmental entity itself; departments of municipal entities are not "persons" subject to suit under § 1983. *See Vance v. County of Santa Clara*, 928 F. Supp. 993, 995-96 (N.D. Cal. 1996) (stating that "[n]aming a municipal department as a defendant is not an appropriate means of pleading a § 1983 action against a municipality") (citation omitted). The SDCJ and OAC are departments of the County of San Diego;[2] they are not "persons" subject to suit under § 1983. *See e.g., Salas v. San Diego County Jail*, 2018 WL 1394283, at *3 (S.D. Cal. Apr. 8, 2016); *Jones v. San Diego County Jail*, 2013 WL 5670923394, at *2 (S.D. Cal. Oct. 15, 2013); *Rodriguez v. Cnty. of Contra Costa*, 2013 WL 5946112, at *3 (N.D. Cal. Nov. 5, 2013) (citing *Hervey v. Estes*, 65 F.3d 784, 791 (9th Cir. 1995)) (stating that "[a]lthough municipalities, such as cities and counties, are amenable to suit under *Monell [v. Dep't of Social Servs*, 436 U.S. 658 (1978)], sub-departments or bureaus of municipalities . . . are not generally considered 'persons' within the meaning of § 1983."). Accordingly, Hawkins' claims against San Diego County Jail and the Office of Assigned Counsel are dismissed sua sponte for failure to state a plausible claim and for seeking monetary relief against an immune defendant. *See* 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).

## IV.   Motion for ADA Access [ECF No. 3] and Motion for Class Certification [ECF No. 4]

Hawkins has also filed a document entitled "Motion for ADA Access Fed. Rules of Regulations 35.107/CRC 1.100." *See* ECF No. 3. The document states: "Plaintiffs

---

[2]  *See* https://www.sandiegocounty.gov/content/sdc/oac/aboutus.html (last visited Jan. 27, 2021) ("The San Diego County Office of Assigned Counsel (OAC) was established by County resolution on December 9, 2008, as an independent and ethically separate division of the Department of the Public Defender. [¶] OAC arranges for high quality legal representation on behalf of individuals charged with a crime in state court who are entitled by law to court appointed attorney services but who cannot be represented by the Public Defender or Alternate Public Defender due to conflict of interest or other issues.")

complain that they have made requests to access court ADA coordinator according to fed. rule of regulations 35.107 and CRC 1.100 and received no response [thereby] being discriminated against as qualified ADA individuals and now motion for clarity on this matter by the court." *Id.* He has also filed a Motion for Class Certification. *See* ECF No. 4. Because the Court has concluded that Hawkins has not stated a plausible claim for relief, the motions are **DENIED** without prejudice.

## V.    Motion for Appointment of Counsel [ECF No. 5]

Hawkins also seeks the appointment of counsel because of the complexity of the case. (Mot. to Appt. Counsel, ECF No. 3 at 1.) There is no constitutional right to counsel in a civil case. *Lassiter v. Dept. of Social Servs.*, 452 U.S. 18, 25 (1981); *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009). And while 28 U.S.C. § 1915(e)(1) grants the district court limited discretion to "request" that an attorney represent an indigent civil litigant, *Agyeman v. Corr. Corp. of America*, 390 F.3d 1101, 1103 (9th Cir. 2004), this discretion may be exercised only under "exceptional circumstances." *Id.*; *see also Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991). A finding of exceptional circumstances requires the Court "to consider whether there is a 'likelihood of success on the merits' and whether 'the prisoner is unable to articulate his claims in light of the complexity of the legal issues involved.'" *Harrington v. Scribner*, 785 F.3d 1299, 1309 (9th Cir. 2015) (quoting *Palmer*, 560 F.3d at 970).

As currently pleaded, Hawkins' Complaint demonstrates neither the likelihood of success nor the legal complexity required to support the appointment of pro bono counsel pursuant to 28 U.S.C. § 1915(e)(1). *See Terrell*, 935 F.3d at 1017; *Palmer¸* 560 F.3d at 970. First, while Hawkins may not be formally trained in law, his allegations, as liberally construed, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), show he nevertheless is fully capable of legibly articulating the facts and circumstances relevant to his claims which are not legally "complex." *Agyeman*, 390 F.3d at 1103. Second, for the reasons discussed above, Hawkins' Complaint requires sua sponte dismissal pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A, and it is simply too soon to tell whether he will be likely to

succeed on the merits of any potential constitutional claim against any of the named Defendants. *Id*. Finally, Hawkins states that counsel should be appointed "due to the complexities of a class action [lawsuit]." ECF No. 5 at 1. The Court has denied Hawkins' Motion for Class Certification, as discussed above, and thus this is not a valid reason for the appointment of counsel in this case.

Accordingly, the Court finds no "exceptional circumstances" currently exist and **DENIES** Hawkins' Motion to Appoint Counsel (ECF No. 5) without prejudice on that basis. *See, e.g., Cano v. Taylor*, 739 F.3d 1214, 1218 (9th Cir. 2014) (affirming denial of counsel where prisoner could articulate his claims in light of the complexity of the issues involved and did not show likelihood of succeed on the merits).

## VI.   Motion for Temporary Restraining Order [ECF No. 6]

Hawkins also seeks immediate injunctive relief. *See* Mot. for TRO, ECF No. 6. In his motion, Hawkins makes the same basic allegations as he does in his Complaint. *Id*. He claims that "without intervention by this Court Plaintiffs will suffer irreparable injury and harm in their cases in that they will continue to be denied fair hearings by way of the denial of the tools necessary to prosecute their claims in opposition" because "the Defendants have developed laws, procedures, regulations or policies that abridge the Plaintiff's const. rights under California [and] United States." ECF No. 6 at 2-3. He further states that "the tools defined by the federal courts are access to copying, service and research for meaningful access to the courts." *Id.* at 3.

To the extent Hawkins seeks a TRO without notice upon an adverse party, he cannot prevail because his submission fails to set out "specific facts in an affidavit or a verified complaint . . . [which] clearly show that immediate and irreparable injury, loss, or damage will result . . . before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A); *Gomez v. Vernon*, 255 F.3d 1118, 1128 (9th Cir. 2001) (stating that "injunctive relief is 'to be used sparingly, and only in a clear and plain case,'" especially when the court is asked to enjoin the conduct of a state agency)  (quoting *Rizzo v. Goode*, 423 U.S. 362, 378 (1976)).

Second, a plaintiff seeking a preliminary injunction must establish: (1) a likelihood of succeed on the merits; (2) a likelihood that plaintiff will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008). "The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction." *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995); *see also Stuhlbarg Intern. Sales Co., Inc. v. John D. Brushy and Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (stating that standards for issuing a TRO are "substantially identical" to those for issuing a preliminary injunction). As the movant, Hawkins "must do more than merely allege imminent harm sufficient to establish standing; [he] must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief." *Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668, 674-675 (9th Cir. 1988) (noting that speculative injury does not constitute irreparable harm sufficient to warrant granting a preliminary injunction) (internal citations omitted).

Hawkins' allegations do not meet these standards. He fails to state a plausible claim for relief and therefore he has not shown any likelihood of success on the merits of those claims. *See Pimental v. Dreyfus*, 670 F.3d 1096, 1111 (9th Cir. 2012) (stating that "at an irreducible minimum," the party seeking immediate injunctive relief "must demonstrate a fair chance of success on the merits, or questions serious enough to require litigation"). He has also not established that he will "suffer irreparable harm in the absence of preliminary relief," nor has he "demonstrated immediate threatened injury." *Winter*, 555 U.S. at 20; *Caribbean Marine Servs. Co., Inc.*, 844 F.2d at 674-675. For these reasons, Hawkins' Motion for TRO (ECF No. 6) is **DENIED**.

## VII.   Conclusion and Orders

Good cause appearing, the Court:

1.      **DENIES** in part the Motion to Proceed IFP as to Plaintiff Dunsmore pursuant to 28 U.S.C. Section 1915(g) (ECF No. 2);

2.     **DISMISSES** this civil action sua sponte without prejudice as to Plaintiff Dunsmore for failing to prepay the $400 civil and administrative filing fees required by 28 U.S.C. § 1914(a) and directs the Clerk of Court to **DISMISS** Daryl Dunsmore as a plaintiff in this action;

3.     **GRANTS** in part the Motion to Proceed IFP as to Plaintiff Hawkins pursuant to 28 U.S.C. § 1915(a) (ECF No. 2);

4.     **DIRECTS** the Watch Commander for the San Diego Central, or their designee, to collect from Hawkins' trust account the $350 filing fee owed by collecting monthly payments from Hawkins' account in an amount equal to twenty percent (20%) of the preceding month's income and forwarding those payments to the Clerk of the Court each time the amount in the account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2). ALL PAYMENTS SHALL BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION;

5.     **DIRECTS** the Clerk of the Court to serve a copy of this Order on Watch Commander, San Diego Central Jail, 1173 Front Street, San Diego, CA 92101;

6.     **DENIES** Hawkins' Motion for ADA Access (ECF No. 3);

7.     **DENIES** Hawkins' Motion for Class Certification (ECF No. 4);

8.     **DENIES** Hawkins' Motion for Appointment of Counsel (ECF No. 5);

9.     **DENIES** Hawkins' Motion for TRO (ECF No. 6);

10.     **DISMISSES** Hawkins' Complaint for failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. Section 1915(e)(2)(B)(ii) and Section 1915A(b)(1).

11.     **GRANTS** Hawkins **sixty (60)** days leave from the date of this Order in which to file an Amended Complaint which cures all the deficiencies of pleading noted above. Hawkins' Amended Complaint must be complete by itself without reference to his original pleading. Defendants not named and any claim not re-alleged in his Amended Complaint will be considered waived. *See* S.D. Cal. Civ. L.R. 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading

supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

If Hawkins fails to file an Amended Complaint within the time provided, the Court will enter a final Order dismissing this civil action based both on Hawkins' failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. Sections 1915(e)(2)(B)(ii) and 1915A(b)(1), and his failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED**.

Dated:  February 16, 2021

Hon. William Q. Hayes
United States District Court

27

3:20-cv-2200-WQH-KSC